565 S.W.2d 421 (1978)
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellant,
v.
O. M. GOODING et al., Appellees.
No. 77-326.
Supreme Court of Arkansas, In Banc.
May 15, 1978.
*422 Laser, Sharp, Haley, Young & Huckabay, Little Rock, for appellant.
Friday, Eldredge & Clark by Overton S. Anderson, Little Rock, Kincaid, Home & Trumbo by Hugh R. Kincaid, Fayetteville, for appellees.
GEORGE ROSE SMITH, Justice.
The principal question in this case is one of insurance coverage. In 1975 the appellant, Southern Farm Bureau, issued a $10,000/$20,000 policy of automobile liability insurance to the principal appellee, 0. M. Gooding, a farmer. The policy specifically covered nine described automobiles and trucks, but it made no reference to a lowboy trailer owned by Gooding.
In November, 1975, Ivan Gooding, also an insured, was driving one of the described trucks on a highway. The truck, by means of its fifth wheel, was pulling the lowboy, upon which a bulldozer tractor was being transported. As Ivan allegedly drove too fast around a curve the chains holding the bulldozer gave way, so that the bulldozer was thrown into the path of an oncoming vehicle being driven by Donald B. Hawksley. Hawksley was injured.
Hawksley brought a $75,000 personal injury suit against the Goodings. Upon Southern Farm Bureau's denial of coverage, the Goodings filed a third-party complaint against Southern Farm Bureau and also against the insurance agent, Joe Rodman, who wrote the policy. It was alleged that Rodman had represented to the Goodings that trailers and lowboys would be covered when being pulled by an insured vehicle. Eventually Southern Farm Bureau and Rodman filed counterclaims against each other, each insisting that the other was liable for any possible recovery by Hawksley.
The two branches of the case were tried separately. At the first hearing, submitted largely on stipulations, the court determined that Southern Farm Bureau's policy protected the Goodings, up to $10,000, against liability for Hawksley's injuries. At the second trial, two weeks later, a jury returned a $10,000 verdict for Hawksley. The court's final judgment included the $10,000 award in favor of Hawksley against the Goodings, a similar award in favor of the Goodings against Southern Farm Bureau, plus penalty and attorney's fee, and a $3,538.97 award in favor of Rodman against Southern Farm Bureau, representing Rodman's expense and attorney's fee in defending the Goodings' claim against him.
The principal question is whether the policy's failure to describe the lowboy as an insured vehicle exempts the insurance company from liability. Several provisions of the policy are pertinent. First, by the basic insuring clause the insurer agreed to pay on behalf of the insureds, under coverages A and B, claims for personal injuries and property damage "caused by accident and arising out of ownership, maintenance or use of any automobile." Next, there was this exclusion: "This policy does not apply: (a) Under any of the coverages for automobiles owned by the insured . . unless properly described on the declaration and used for the purposes stated." Third, there was this definition of an automobile: "Automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) but for the purpose of Division 1 coverage *423 C only [not involved in this case], an automobile also means a farm tractor or other farm equipment while being operated on public highways.
The trial court was right in construing the contradictory and therefore ambiguous language of the policy in favor of the insured. On the one hand, an automobile is defined to mean a trailer, which would be a basis for excluding coverage of the lowboy, because it was not described in the declaration. On the other hand, an automobile includes "any machinery or apparatus attached thereto." A dictionary definition of apparatus is: "Any complex instrument or appliance, mechanical or chemical, for a specific action or operation; machinery; mechanism." Synonyms are listed as: "Equipment; instrument; machine." Webster's New International Dictionary (2d ed., 1939). Hence the insureds' truck, which was described in the declaration, included the lowboy that it was pulling, as being machinery or apparatus attached to the insured truck. This interpretation of the policy is confirmed by still another paragraph, which provides that when two or more automobiles are insured under the policy, the terms of the policy apply separately to each, "but a motor vehicle and a trailer attached thereto shall be held to be one automobile as respects limits of liability under Coverages A and B," which are involved here. That is to say, if 0. M. Gooding had listed the lowboy and paid an additional premium for its inclusion in the policy, he would have obtained no additional protection with respect to Hawksley's claim, because the limit for both vehicles would still have been only $10,000. Such a result can hardly have been contemplated by the parties to the contract.
Two other points for reversal are argued by Southern Farm Bureau. First, it is contended that the trial court should not have awarded the statutory 12% penalty to the Goodings, because (it is argued) their third-party complaint against their insurance company was merely a suit for a declaratory judgment, as to which no penalty is provided. Ark.Stat.Ann. § 66-3239 (Repl.1966). The cited statute applies to suits to cancel or lapse a policy, to change its terms, to obtain a declaratory judgment, or to require the insurer to reinstate a policy. The plain intent of the statute was to amend the prior law by providing an attorney's fee when the insured prevails in a controversy with his insurance company, but does not actually obtain a money judgment against it. Here, from the outset, the Goodings have sought to obtain protection and reimbursement with respect to any monetary judgment that Hawksley might be awarded in the lawsuit. In the final judgment, now before us, the Goodings did obtain a $10,000 recovery against their insurer. Consequently they were entitled to both penalty and attorney's fee under Ark. Stat.Ann. § 66-3238. An additional $1,500 attorney's fee is allowed for counsel's services in this court.
Second, it is argued that Southern Farm Bureau's agent, Rodman, should not have been allowed to recover the expenses and attorney's fee he incurred in defending the third-party complaint filed against him by the Goodings. We think the recovery was proper. A principal has a duty to indemnify his agent when the agent suffers a loss which, because of their relation, it is fair that the principal should bear. Restatement, 2d, Agency, § 438 (1958). In particular, the agent can recover the expenses of defending an action brought by a third person because of the agent's authorized conduct. Id., § 439. If Rodman represented to the Goodings that the lowboy would be covered while being pulled by an insured vehicle, that representation was correct. Rodman, the agent, was subjected to the expense of litigation because his principal, Southern Farm Bureau, erroneously denied that the coverage existed. In the circumstances it is fair that the principal be required to indemnify the agent for his expenses, including his attorney's fee.
Rodman asks that a fee be allowed for the services of his attorneys on this appeal, but we can find no basis for such an allowance. In the trial court Rodman did not recover an attorney's fee for *424 this litigation with his principal. He merely recovered the expenses to which he had been put by his principal, which happened to include an attorney's fee. The Goodings have not appealed from the judgment in favor of Rodman upon their complaint against him. Consequently, upon this appeal there has been no issue between Rodman and the Goodings, nor any possibility that a reversal would entail any liability on his part to them. As to Rodman, the only question on appeal has been whether he can recover his prior expenses from his principal. The situation presents no reason for a departure from the general rule that a successful litigant is not ordinarily entitled to attorneys' fees. Romer v. Leyner, 224 Ark. 884, 277 S.W.2d 66 (1955).
Affirmed.
BYRD, J., not participating.
FOGLEMAN, J., dissents. FOGLEMAN, Justice (dissenting).
It seems to me that one must overcome great difficulty in finding an ambiguity to resolve against the insurance company's policy involved in this case. The coverage clause is recited in the majority opinion, along with the exclusionary clause. The meaning of these clauses is governed by the policy definition of "automobile." The policy definition is set out in the majority opinion. "Automobile" does not have any meaning other than the policy definition. In order to determine the meaning of the policy, one must substitute the policy definition for the word automobile in both the coverage clause and the exclusion. In doing so, we are concerned with no more than Coverages A and B. We then have the following clauses to consider:
Insuring Agreement:
1. Liabilitycoverages (A) bodily injury, and (B) property damage.
1. To pay on behalf of the insured all sums except punitive damages which the insured shall become legally obligated to pay as damages: Coverage Abecause of bodily injury sustained by any person, and Coverage Bbecause of injury to or destruction of property caused by accident and arising out of ownership, maintenance or use of any land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), including loading and unloading thereof.
Exclusions:
This policy does not apply:
(a) Under any of the above coverages for land motor vehicles, trailers or semi-trailers designed for travel on public roads (including any machinery or apparatus attached thereto) owned by the insured.
The definition of "Two or more automobiles" does not affect any question involved here, because, except for limits of liability under Coverages A and B, the terms of the policy apply separately to each at the inception or any renewal date, unless properly described on the declaration and used for the purposes stated.
"Automobile" cannot mean one thing in one clause and another in another. In order to have coverage (A) or (B), the land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) must have been properly described on the declaration in the policy.
The low-boy trailer from which the bulldozer fell and caused the damage to Hawksley was not described in the policy. It does not matter whether it was considered as a trailer or apparatus attached to a land motor vehicle. The policy terms still required listing. The bulldozer was not listed either, if that matters. Thus, it is clear that personal property damages were not covered because of the exclusion. It was stipulated that Hawksley sought recovery for $100 in personal property damages from the Goodings. To reach the conclusion reached by the trial court and the majority eliminates the exclusionary clause.
*425 It appears that 0. M. Gooding was the owner of the trailer. Insofar as he is concerned, there was no policy coverage for either personal injuries or property damages. It seems, however, that under the terms of the policy, coverage for personal injuries is not limited to those arising out of ownership, maintenance or use of any "automobile." It would seem, then, that appellant was obligated to defend Ivan I. Gooding and to pay the judgment against him.
I do not agree on appellant's liability for the 12% penalty. The amount of the liability was not determined or definite until there was a jury verdict on the other phase of the case. The cross-complaint alleged that "if and to the extent Defendants or either of them, are determined to be liable to the Plaintiff, that Southern Farm Bureau Insurance Company is liable over to the Defendants for the full amount of such Judgment up to the policy limits." The prayer of an amendment to the cross-complaint was for judgment over against Southern Farm Bureau Casualty Insurance Company, "for the full amount of such Judgment up to the policy limits as aforestated,...." The portion of the judgment fixing liability of appellant is dated May 17, 1977. The judgment against the Goodings was dated June 1, 1977. This was in keeping with what was actually done. In my opinion, this was a declaratory judgment, at least in substance, if not form.